REDMANN, Chief Judge.
An ex-employee appeals from a summary judgment in favor of his former employer for $9,541.77 net paid to him as salary continuation for disabled employees after he had returned to work (for another employer).
The ex-employee argues that the contractual provisions for disability payments are ambiguous, and were not “published” to employees (especially himself), and that he was not engaged in employment of the type and at the place alleged in the petition.
We find no ambiguity. The salary continuation plan provides that “employees prevented from working, as a result of personal illness or injury, will be provided with a program of income protection.” Defendant was paid benefits related to sales commissions for the first three months from September 24, 1979, as to which there is no dispute. Thereafter, he was paid “sick leave,” being 100% of $67,101 “salary,” under items IVB and C: “In the event commissioned sales employees remain disabled and unable to work” after three months, they are paid sick leave for the next three months (and thereafter long-term disability until age 65 and then retirement pay). Thus from December 24 until March 23, defendant was paid $1,290.41 a week salary continuation. But on January 14, 1980, defendant began to work for another employer for $4,000 a month, doing work different from his employment with plaintiff. Defendant never notified plaintiff of his new employment; to the contrary, on April 25, he signed a statement declaring, in part, “I am disabled and can’t return to work.... I basically spend my time reading and walking. ... I also spend time with my family. ... My wife operates a business called Zack’s.... I do not assist her in her business operations. I am not employed. I do not operate a business out of my home. I am not self-employed”. That wording suggests that defendant found no more ambiguity than we do. He cannot have thought that, while working at another employment for $4,000 a month, he was entitled under the quoted contractual language to receive over $5,500 a month from his former employer on the theory that he “remain[ed] disabled and unable to work,” “prevented from working, as a result of personal illness or injury.” Had he thought so, he would not have said in so many ways that he was not working and was not able to work.
His argument that “prevented from working” does not mean prevented from doing any work, but only from working at his “regular job” is rejected.
It is true that in the long-term disability plan (effective after the first six months), an employee is promised income for two years “if you cannot perform the duties of your regular job, and thereafter, to age 65, if you are unable to engage in any occupation or employment for which you are suited by education, training, or experience.” But that plan adds “to receive Long Term Disability Plan income, ... [i]n any event, you cannot engage in any work for compensation or profit.” Thus, the simple fact of an employee’s being physically able to do other suitable work would not defeat eligibility during two years after the first six months of disability. Much less would it defeat eligibility during those first six months, and thus being physically able to do other work does not defeat the interpretation that one is “prevented from working” within the short-term plan’s meaning. Its meaning allows one who could physically do other work to be deemed “prevented from working.” When, however, one is in fact doing other work, it cannot be said that he is “prevented from working” by disability. That phrase had no real ambiguity to start, and comparing it with the “regular job” phrase of the long-term plan does not create such an ambiguity.
*704 Lack of publication of the plan would be irrelevant, unless some new plan reduced benefits, or some earlier erroneous publication misled defendant. Defendant’s rights depend on his employment contract, and the simple fact that he may never have discovered its terms does not expand those terms.
Similarly irrelevant is the petition’s erroneous assertion that defendant’s new employment was with plaintiff’s competitor. That erroneousness does not entitle defendant to keep money to which he is not entitled.
Defendant also argued that he should not be cast for interest before judgment because he was in good faith and La.C.C. 2311 provides only that one in bad faith owes interest from the date of the erroneous payment. The judgment here awarded interest only from judicial demand and not from payment. The general rule is that interest is due from the time a contractual or quasi-contractual debt is due. La. C.C. 1938. C.C. 2311 relieves the good faith recipient of funds paid in error from interest from date of payment, but not from the time that the erroneous nature of the payment is called to his attention. He owes interest at least from judicial demand. See Planiol, Civil Law Treatise (La.L.Inst. trans.) II, 851; see also Smith v. Conrad, 15 La.Ann. 579 (1860).
Affirmed.