SAVOIE, Judge.
U-Serve Petroleum and Investments, Inc. (U-Serve) filed suit against defendants Charles C. Cambre, Jr., d/b/a Stop and Shop, Bobbie Joe Moreau and Easterly Gas & Oil Co., Inc., for breach of contract. Thereafter, various reconventional demands, cross-claims, and third-party claims were made. Judgment was subsequently rendered in favor of U-Serve against Mor-eau; all other claims were dismissed. From this judgment both Moreau and U-Serve appeal.
On March 5,1981, Charles C. Cambre, Jr. d/b/a Stop and Shop, entered into an agreement entitled “Contract and Franchise Agreement” with U-Serve.[1] Under the terms of this contract, U-Serve was to provide and install on Cambre’s property, “all necessary equipment incidental to a self service gasoline operation.” Addition *823 ally, U-Serve was required to maintain the equipment in good working order and to warrant the delivery of gasoline within a 24-hour period. In return, U-Serve was granted the exclusive right to sell petroleum products at this location during the five-year term of the contract. Included in the contract was a clause stating that the sale or lease of the property would not negate or void the agreement, and that the terms, conditions and stipulations contained in the contract were to be binding upon and to run with the land. The contract further provided the equipment was not to be considered an immovable by destination and that upon termination of the contract, U-Serve could enter the premises and remove the equipment in a workmanlike manner.
Upon execution, the contract was properly recorded in the conveyance records for the Parish of Livingston. However, in the contract, Cambre was erroneously cited as “Stop and Shop, Inc.,” which resulted in the contract being indexed under Stop and Shop, Inc., rather than Charles C. Cambre, Jr.
Subsequent to the execution of this contract, Cambre entered into negotiations with Moreau concerning the sale of the business. On August 5, 1981, Cambre and Moreau entered into an agreement to buy and sell, which included therein all facilities for the storing and dispensing of petroleum products. On August 20, 1981, the parties executed a sale with mortgage which contained an itemized listing of all property purchased. However, the petroleum dispensing equipment that was previously shown on the agreement to buy and sell was not included in the itemized list of property purchased.
Following the sale, Moreau proceeded to have U-Serve’s gas pumps removed and new pumps belonging to Easterly Gas and Oil Co., Inc., another gasoline distributor, installed. Moreau then began to purchase petroleum products from Easterly in derogation of the “Contract and Franchise Agreement” with U-Serve. Furthermore, Moreau has continued to use the remaining equipment installed by U-Serve and refused to surrender the removed pumps when requested to do so.
As a result of Moreau’s action, U-Serve filed suit for loss of profits, damages, breach of contract and loss of property and equipment resulting from the breach of the “Contract and Franchise Agreement.” Pri- or to trial, Easterly Gas & Oil Co., Inc. was dismissed by a motion of U-Serve. Moreau filed numerous exceptions, including a peremptory exception of no cause of action, all of which were dismissed by the trial court. Subsequently, Moreau filed an answer, re-conventional demand, and a third-party demand. Therein, he sought damages for defamation of character in the reconven-tional demand based on allegations that he had converted U-Serve’s property. Additionally, he sought reimbursement against the Clerk of Court[2] and Cambre[3] for any amount which he might be held liable to U-Serve.
ACTION OF THE TRIAL COURT
The trial court found that the “Contract and Franchise Agreement” was a lease; that recordation of this léase gave constructive notice to Moreau; and thus when Moreau purchased the land and buildings he purchased subject to the terms of the lease. Additionally, the trial court found that Moreau “... did in fact have personal knowledge of the contents of the agreement between Cambre and U-Serve bef-gore he bought Stop and Shop ...”
The trial court also dismissed Moreau’s claim against the Clerk of Court on the basis of Progressive Bank and Trust, Co. v. Dieco Specialty Co., Inc., 421 So.2d 345 (La.App. 1st Cir.1982).
The trial court found that Moreau had converted U-Serve’s equipment to his own *824 use. All other demands by and against the parties to the litigation were dismissed.
Based on these findings, judgment in the total amount of $36,428.90 was awarded in favor of U-Serve and against Moreau, together with costs and legal interest from date of judicial demand.
From this judgment Moreau has appealed, asserting the following specifications of error:
A. The trial court erred as a matter of law in holding that Bobbie Joe Moreau was bound by the March 5, 1981 contract; the court also erred in overruling the exception of no cause of action.
B. The trial court erred as a matter of law in holding that Bobbie Joe Moreau had converted the equipment.
C. The trial court erred in dismissing the third-party demands, and the recon-ventional demand.
D. The trial court erred in awarding legal interest from the date of judicial demand.
U-Serve appeals asserting as error the trial court’s failure to hold Cambre jointly and solidarily liable with Moreau.
MOREAU’S SPECIFICATIONS of ERROR A & B
Moreau contends that the trial court erred in holding him bound by the “Contract and Franchise Agreement” entered into by U-Serve and Cambre. It is his position that the “purchase of immovable property does not obligate him to fulfill the terms of a contract to which he was not a party. The trial court found that this contract was actually a lease which formed a real obligation, binding upon Moreau when he acquired the property. Our initial determination, therefore, must be whether a real or personal right was created by the “Contract and Franchise Agreement.” We find, and the record reveals that this contract did not create a real right or obligation, but rather only established a personal right. See Huber Oil Co. of Louisiana v. Save Time, 422 So.2d 597 at 601 (La.App.3rd Cir.1982).
NATURE OF RIGHT CREATED BY
“CONTRACT & FRANCHISE AGREEMENT”
The crucial factor in determining whether a covenant is one that “runs with the land,” or is a mere personal agreement is whether or not the obligation was imposed in favor of the estate or in favor of a person. Daniel v. Department of Transportation and Development, 396 So.2d 967 (La.App. 1st Cir.), writ denied, 400 So.2d 1385 (La.1981). Merely stating that a contract is to “run with the land” does not create immovable rights. See LSA-C.C. art. 470; and Hawthorne Oil & Gas Corp. v. Continental Oil, 368 So.2d 726 (La.App. 3rd Cir.), reversed on other grounds, 377 So.2d 285 (La.1979). Although the contract in question stated that it was to “run with the land,” it was in fact a personal contract between Cambre and U-Serve because it favored the person of U-Serve and not a dominant estate. Accordingly, in order to find Moreau liable under the terms of this contract, it must be shown that he assumed the obligations contained therein.
MOREAU’S ASSUMPTION OF LIABILITY
At trial, it was established that Mor-eau was aware of the existence of the contract. Aside from the fact that the contract was properly recorded in the conveyance records, testimony established that Moreau received a copy of the contract some ten days prior to the closing of the sale. We agree with the finding .of the trial court that Moreau had constructive as well as actual knowledge of the contract and its terms. Both Cambre, and his former wife, Mercy Cambre Lobell, testified that prior to the sale they discussed the contract with Moreau and he expressed his intention to assume the obligation. Mrs. Lobell testified that she discussed the contract with Moreau on several occasions and was repeatedly assured that there was no problem and that it was being taken care of. Cambre testified that during the negotiations, Moreau specifically stated that he was going to take over the obligation with *825 the oil company. While Moreau testified that he did not recall saying he would assume the obligation, he stated that it was never his intention to assume any obligation Cambre had toward U-Serve. However, a review of the record reveals that Moreau’s actions belie his testimony.
Initially, Moreau denied any knowledge of the contract between Cambre and U-Serve. He subsequently admitted that he was aware of the contract and had in fact received a copy of it prior to closing the sale. Furthermore, it was established that prior to the closing, Moreau contacted Carse Whittington, an agent for U-Serve, concerning the purchase of the gasoline. According to Whittington, Moreau wanted to purchase smaller quantities of gasoline than the 8,000 gallon load called for in the contract. Moreau also inquired about the possibility of a new contract with him. Whittington informed Moreau that there was no need for a new contract because they already had one with Cambre which had four and one half years remaining on it, and that 8,000 gallons was the minimum load delivered in that area. Moreau then inquired, about the possibility of purchasing the equipment from U-Serve, but was told that U-Serve had no intention of selling it. Finally, Moreau requested information concerning methods of payment available under the contract. He was informed that he could either pay C.O.D. or on credit, depending upon his credit rating. Moreau then requested a credit application which Whittington testified he sent to Moreau in order that a line of credit might be established. It should be noted that these discussions took place prior to Moreau’s purchasing the property, and following his assurances to Cambre that he would assume the obligations. Furthermore, at no time did Moreau indicate an intention not to comply with the contract.
From the foregoing, we come to the inescapable conclusion that Moreau in fact knew of and assumed the obligations contained in the “Contract and Franchise Agreement.” The fact that he closed the sale knowing the contract existed and that U-Serve intended to hold him to it, signifies his voluntary act of assumption of Cam-bre’s obligations. Had Moreau not intended to assume these obligations as he testified, he had ample opportunity to express that intention prior to sale. His failure to avail himself of those opportunities is probative of his intention to assume the obligations.[4]
PUBLIC RECORD’S DOCTRINE AS MOREAU’S DEFENSE
Moreau seeks to avoid all liability under the contract by resorting to the Public Records Doctrine. It is his contention that since the contract was not properly indexed, it was not discovered during a title exam and therefore, not applicable to him. Furthermore, Moreau testified at trial that had the title check revealed the existence of the contract, he would have honored the contract. The record shows that while the contract was not properly indexed, it was properly recorded. In Progressive Bank & Trust Company v. Dieco Specialty Company, Inc., 421 So.2d at 347, this court stated that an act which is actually recorded, but which could never be found from the indices because it is not indexed properly, is nevertheless effective against third-parties. Under this rationale, Moreau’s reliance upon the Public Record’s Doctrine as a defense is misplaced. Although a check of the indices did not reveal the contract under Cambre’s name, the contract was indeed properly recorded and therefore effective against Moreau and all third-parties. Furthermore, Moreau had a copy of the contract prior to having a title check made, yet failed to check under the name *826 Stop and Shop as appeared on the contract even though he knew this was the name under which Cambre did business.
MOREAU’S CONVERSION OF U-SERVE’S PROPERTY
As to the question of whether Mor-eau converted the property, we find that the testimony supports the ruling of the trial court. Moreau attempts to question the ownership interest of U-Serve to the equipment by referring to numerous corporate mergers and transactions. But, as the record clearly shows, Moreau knew prior to the sale that Cambre, his vendor, did not own the equipment and therefore could not convey ownership interest to Moreau. Therefore, regardless of the question of whether U-Serve or its parent corporation owned the equipment, Moreau did not own it and was well aware of this fact, yet he proceeded to convert the property to his own use. When requested by Mr. Whit-tington to return the equipment, Moreau refused and referred the matter to his attorney.
Based on the foregoing, we find the trial court was not manifestly erroneous in holding Moreau bound under the “Contract and Franchise Agreement” and in finding that Moreau had converted the equipment. Therefore, these assignments of error are without merit.
MOREAU’S SPECIFICATION OF ERROR C
Any discussion of the reconventional demand is hereby pretermitted due to our prior disposition of the conversion issue.
By way of third-party demand, Mor-eau seeks indemnification from Cambre and the Clerk of Court of the Parish of Livingston for any amount which he is found liable to U-Serve. The basis of his claim against the Clerk is that the “Contract and Franchise Agreement” between Cambre and U-Serve was improperly indexed and that Moreau relied on the indices to his detriment. In support of his claim, Moreau cites LSA-R.S. 44:162 which reads as follows:
The failure of recorders to keep correct indexes for mortgages shall subject them and the sureties on their official bonds to the payment of all damages suffered thereby by any person or corporation.
However, Moreau’s reliance upon this statute is misplaced. A simple reading of the statute clearly shows that its application is limited to mortgage indices. In the case at hand it is undisputed that reliance was not made upon mortgage indices but rather upon the conveyance indices. Therefore, this statute is clearly inapplicable to the case sub judice. Furthermore, it is a well established principle of law that the indices are not part of the record, but rather are simply for the convenience of those examining the record. Agurs v. Belcher & Creswell, 111 La. 378, 35 So. 607 (1903); and Clark v. Reed, 122 So.2d 344 (La.App. 2nd Cir.1960). Finally, it should be noted that the contract in question was in fact recorded under the names that appeared on the document. The fact that the parties to the transaction erroneously listed Cambre as Stop and Shop, Inc. cannot be imputed to the Clerk of Court in order to establish liability.
Additionally, Moreau seeks indemnification and reduction from Cambre, his vendor, based upon alleged breach of warranty. Moreau contends that if U-Serve is found to be the owner of the equipment, then that determination amounts to a partial eviction from the property, and the contract must be considered to be a charge on the land. As authority for this claim, Moreau relies upon LSA-C.C. art. 2501 which states:
Although at the time of the sale no stipulations have been made respecting the warranty, the seller is obliged, of course, to warrant the buyer against the eviction suffered by him from the totality or part of the thing sold, and against the charges claimed on such thing, which were not declared at the time of the sale. (Emphasis ours)
*827 Once again, Moreau’s reliance on this article is misplaced. In order for a cause of action to exist under this article, it is essential that the vendor failed to declare certain facts at the time of the sale. Such is not the case here. It is clear from the record that prior to the sale, Cambre informed Moreau of the existence of the contract as well as U-Serve’s ownership of the equipment. As previously shown, not only did Moreau know of the contract’s existence, he was actually given a copy of it prior to the sale. Furthermore, testimony reveals that prior to purchasing the property, he contacted U-Serve concerning the possible purchase of their equipment. Based upon these facts we find that Mor-eau had actual and constructive knowledge of the very facts he now claims were not disclosed to him and therefore, constitute a breach of warranty.
For the foregoing reasons we find no manifest error in the trial court’s dismissal of Moreau’s third-party demands.
MOREAU’S ASSIGNMENT OF ERROR D
Moreau lastly contends that the trial court erred in awarding legal interest from the date of judicial demand. La.C.C. art. 1938 (presently LSA-C.C. art. 2000) provides that all debts shall bear interest from the date they become due unless otherwise stipulated.
In the instant matter, the record was devoid of any stipulation of when interest would become due. As such, interest runs from the date it becomes due, that being the date judgment is rendered. Accordingly, the trial court erred in awarding legal interest from the date of judicial demand.
For the above and foregoing reason, the trial court’s judgment awarding legal interest from judicial demand is hereby amended to have interest commence from the date judgment was rendered.
U-SERVE’S SPECIFICATION OF ERROR
U-Serve assigns as error the trial court’s failure to hold Cambre liable jointly and in solido with Moreau. As is evident from the record, Cambre became and remained contractually obligated to U-Serve when he signed the “Contract and Franchise Agreement.” The record is devoid of any evidence of a release or discharge from this obligation. As such, Cambre remains the obligor of U-Serve under the terms of the “Contract and Franchise Agreement.” Therefore, we find the trial court erred in failing to find Cambre liable to U-Serve. However, we note that Cambre also filed a third-party demand against Moreau seeking indemnification in the event he is found liable to U-Serve. Based on our prior finding that Moreau, by oral contract, assumed Cambre’s obligation to U-Serve when he purchased the property, we find that Cam-bre is entitled to indemnification from Mor-eau for any amount assessed against him in the main demand.
JUDGMENT
Accordingly, IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of U-Serve Petroleum and Investments, Inc., against Bobbie Joe Moreau in the full sum of Eleven thousand three hundred and no/100, ($11,300.00) Dollars together with legal interest from July 11, 1984, until paid for the conversion of property. IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment in favor of U-Serve Petroleum and Investments, Inc., against Charles C. Cambre, Jr. d/b/a Stop and Shop in the full sum of Twenty-five thousand one hundred twenty-eight and 90/100, ($25,128.90) Dollars together with legal interest from July 11, 1984, until paid for breach of the “Contract and Franchise Agreement.” IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment in favor of third-party plaintiff, Charles C. Cambre, Jr. and against third-party defendant Bobbie Joe Moreau for any and all monies which Charles C. Cambre, Jr. has become obligated to U-Serve Petroleum and Investments, Inc., in this matter, said judgment being a judgment over against third-party defendant for damages incurred by *828 third-party plaintiff as a result of the judgment against him in the principal demand.
All other claims are dismissed. Bobbie Joe Moreau is to pay all costs.
AFFIRMED IN PART, AMENDED & AFFIRMED IN PART, REVERSED IN PART & RENDERED.
RENDERED.

. This was actually a renewal of a previous "Contract and Franchise Agreement" between Cambre and Somisco Oil Co., dated February 5, 1971, which expired on March 4, 1981. Somis-co changed its name to Seago Enterprises, Inc., then merged with Mid-Continent Systems, Inc. U-Serve is a corporate subsidiary of Mid-Continent.

. Made third-party defendants were Lucius Patterson, the Clerk of Court for the Parish of Livingston and the estate of Alsay Addison, former Clerk of Court, together with their sureties.

. Named as third-party defendant along with Cambre was his former wife Mercy Aydell Cam-bre Lobell.

. La.C.C. art. 1821 provides that an obligor and a third person may agree to an assumption by the latter of an obligation of the former. However, to be enforceable by the obligee against the third person the agreement (assumption of obligation) must be in writing. Therefore, judgment cannot be rendered in favor of U-Serve against Moreau as concerns this portion of the suit, but must be rendered against Cambre and Cambre's third party demand rendered against Moreau.