GARRISON, Judge.
This is an appeal from a judgment of the district court granted June 18, 1985 in favor of the plaintiff, Dr. Sidney Neuwirth and against the defendant SCL Limited Partnership, awarding damages in the amount of $15,000.00.
The trial court provided the following written reasons for judgment:
“There is no doubt that defendant was guilty of negligence in the storage of plaintiffs stamp collection. It used a Sentry box that was designed to emit moisture when exposed to heat, and was supposed to be opened periodically to allow moisture to escape. Not only was this not called to plaintiffs attention, defendant’s supervising employee had never even seen the owner’s manual on how the box was to be used.
Defendant’s advertising brochures offering ‘vaults surrounded by 3 feet of solid steel and concrete’ suitable for the storage of gold, silver, etc., is utterly inconsistent with the limitation of liability to $1.00 per pound. Plaintiff credibly denies any knowledge of the limitation before the loss occurred. Considering the quality of security it advertised, which it likens to the ‘Swiss banking system’, it was bound to call its $1.00 per pound limitation of liability to the specific attention of its customer. Plaintiff prevails.”
From that judgment, defendant appeals.
Dr. Neuwirth, in anticipation of his marriage to a New Orleanian and his upcoming move to the Crescent City, telephoned the Security Center from Peoria, Illinois. Neu-wirth had read about the Security Center in the New York Times, Time Magazine and local publications. Neuwirth had a safe full of valuables that he desired to ship to New Orleans. Arrangements to store the safe in the Security Center were made by telephone. No contract was executed or mailed to Neuwirth.
Neuwirth’s stamp collection of 30 years continued to grow. As a result, he required an additional safe which he rented on October 10, 1980. Upon the advice of Security Center personnel, he rented a “B-4 Sentry Safe.”
The Security Center brochures admitted into evidence hold out the Center’s expertise in the security business:
“The Swiss banking system is world renowned for its confidentiality and security. Now you can receive this same type of protection right here in New Orleans at The Security Center.”
The brochure specifically lists stamp collections and advertises that the Center is “fully climate controlled.” Other representations by The Security Center include their ability to handle “tenants with high security needs” including a current tenant list including “a clandestine government agen *352 cy, an industrial diamond dealer, a precious metals dealer, an art dealer, two foreign governments and a steamship line that carries armaments.”
In short, The Security Center does not hold itself out as an ordinary rental warehouse.
On November 22, 1982, Neuwirth checked his stamp collection in the B-4 Sentry safe. His box had been moved from its original location upstairs to the basement. Upon opening the box, it emitted a noxious odor and he noted that his stamps were all stuck together and moldy. He contacted the manager, who told him that the Security Center was not liable. Neuwirth asked the manager, Jim Mart, who owned the Security Center and the manager told him McDonald Sales. Neu-wirth specifically stated that he thought the Oreck Co. owned it[1] and was told that Oreck had nothing to do with it. Neuwirth told Jim Mart to contact his insurance company and that Neuwirth would be contacting his lawyer. Neuwirth also made a contemporaneous written statement of the events dated November 22,1982 and stated “Signed in the Security Center approx. 1:45 p.m.” Thus, November 22,1982 is the date on which the damage was discovered or manifest as well as the first date on which it could have been discovered. Thereupon Neuwirth went directly to his lawyer’s office.
On November 22, 1983 suit was filed against “McDonald Sales d/b/a The Security Center,” The sheriff’s return shows that personal service of process was made upon “McDonald Sales d/b/a The Security Center” on Jim Mart, Mgr. on February 21, 1984 at the same municipal address as The Security Center Building is located, namely 147 Carondelet Street. Service was not refused. McDonald filed an exception of prescription. An amended petition was later filed naming “SCL, a limited partnership in commendam and Robert P. Oreck” as defendants. SCL filed an exception of prescription and an answer. Trial was held and judgment rendered.
On appeal, defendants raise basically 4 specifications of error:
1. prescription;
2. The Security Center is merely a warehouse;
3. plaintiff failed to prove intentional fraud on the part of The Security Center;
4. legal interest.
Turning to the first specification of error, the Security Center argues that the case is prescribed because they were not properly served, hence the filing of suit did not interrupt the prescriptive period.
The date on which Dr. Neuwirth first discovered the damage was November 22, 1982. Suit was filed on November 22,1983 against “McDonald Sales d/b/a The Security Center” as per Jim Mart’s information, with a request for service of process on Moise Dennery at the Hibernia Bank Building.
On February 21, 1984 personal service was made on Jim Mart, Manager of the Security Center as an employee of McDonald Sales at The Security Center, 138 Carondelet. The sheriff's return on this service indicates that the citation was prepared by the Clerk's Office on November 30, 1983 and the Sheriff's Office received the citation from the Clerk’s Office on December 1, 1983. Apparently, service was not made by the Sheriff’s Office for two months thereafter.
On March 22, 1984 a second personal service was made on “McDonald Sales Corp. through its agent Moise W. Den-nery.” The March 22 service return indicates that the citation was prepared by the Clerk’s Office on March 20, 1984 and the Sheriff’s Office received the citation from the Clerk’s Office on March 21, 1984.
On April 6,1984, McDonald Sales filed an exception of prescription and an answer alleging that it was incorrectly described as “McDonald Sales, d/b/a The Security Center” and arguing that a one year prescriptive period should apply.
*353 On March 22, 1982, Neuwirth filed an amended petition stating:
"... petitioner wishes to amend his petition to join the following partnerships as parties defendant to this suit:
a. SCL Limited Partnership, a Partnership in Commendam, domiciled and doing business at 147 Carondelet Street, New Orleans, Louisiana, whose general partner is Security Center, Limited and whose limited partners are McDonald Sales, Steven Oreck, Thomas A. Oreck and Bruce J. Oreck.
b. Robert P. Oreck, d/b/a Security Center Building, a Partnership in Com-mendam, domiciled and doing business at 147 Carondelet Street, New Orleans, Louisiana and whose general partner is Robert P. Oreck and whose limited partners are approximately nineteen in number.”
On May 31st, the Clerk’s Office prepared the service of process citations for the amended petition and order, which were received by the Sheriffs Office on June 4, 1984. Three amended citation and petition services were requested by plaintiff as follows:
“McDonald Sales through its attorneys of record, Joe B. Norman and James B. McMichael, One Shell Square, Fiftieth Floor, New Orleans, Louisiana 70139. SCL Limited Partnership, through its general partner, The Security Center Limited, Glen R. Wolf, President, at 147 Carondelet Street, New Orleans, Louisiana 70130.
Robert P. Oreck, d/b/a Security Center (A Limited Partnership in Commendam) through its general partner Robert P. Oreck at 147 Carondelet Street, New Orleans, Louisiana 70130.”
On June 5,1984, personal service was made on McDonald Sales through its attorney. On June 6, 1984 personal service was made on Robert P. Oreck d/b/a The Security Center (A Limited Partnership in Commen-dam) through its General Partner on James Mart, Manager at 147 Carondelet (The Security Center). On June 6, 1984 personal service was made on SCL Limited Partnership through its General Partner, The Security Center Limited, Glen R. Wolf, President through James Mart, Manager also at 147 Carondelet.
On June 19, 1984, McDonald Sales filed an Answer to the Amended Petition in which McDonald denied that Robert P. Oreck d/b/a Security Center was doing business at 147 Carondelet Street, admitted that Dr. Neuwirth entered into a contract with the Oreck partnership and admitted that sometime after October 10,1980 Oreck Partnership sold “the immovable property located at 147 Carondelet to SCL.”[2] McDonald Sales finally, raised an affirmative defense, namely a limitation of liability clause.
On June 19, 1984, SCL Limited Partnership filed an exception of prescription and an answer denying that Robert P. Oreck d/b/a The Security Center, A Louisiana Partnership in Commendam (Oreck Partnership) was doing business at 147 Caron-delet St.
On October 15, 1984, plaintiff and defendants SCL, Ltd. and Robert P. Oreck entered into a joint motion dismissing Robert P. Oreck and a stipulation providing as follows:
“It is stipulated that, with regard to a contract originally entered into between Neuwirth and Oreck, which was embodied in a written “non-negotiable warehouse receipt” dated October 2, 1980 a copy of which is attached hereto and incorporated herein as Exhibit A, SCL is the successor and assignee of Oreck and has succeeded to all of the rights, privileges, benefits, obligations, duties, and liabilities, of Oreck under said contract as if said contract had originally been entered into between Neuwirth and SCL. This stipulation applies both to contract claims arising under said contract and tort claims arising out of the perform- *354 anee of said contract. This stipulation is not intended to affect any rights and/or liabilities as between SCL and Greek.”
Turning to appellants first specification of error, SCL argues that the trial judge erred in failing to grant their exception of prescription. Plaintiff discovered the damage to the stamps on November 22, 1982, the date which begins the prescriptive period. Suit was filed on November 22,1983 against McDonald Sales d/b/a The Security Center and served on Jim Mart, Manager of the Security Center at the Security Center. In fact, Mart told the plaintiff the McDonald Sales name. As was later discovered, Jim Mart gave plaintiff the wrong name. In fact, however, McDonald Sales is a limited partner of SCL Ltd. Partnership. Thus SCL did have actual knowledge of the suit. These facts are significant only if one accepts SCL’s argument that a one year prescriptive period applies because this is an action in tort. We do not agree. We find, as did the trial judge, that the instant case is one in contract, specifically the contract of deposit and as such is prescribed by three years. See: C.C. Art. 2926 et seq. C.C. Art. 3494 (formerly C.C. Art. 3538). Accordingly, this specification of error is without merit.
Turning to the second specification of error, the trial court found that The Security Center’s reliance upon its limitation of liability clause contained in the warehouse receipt was utterly inconsistent with the representations it makes in its materials. He further found credible Neu-wirth’s denial of any knowledge of a “$1.00 per pound per article” limit of liability. These findings appear to be proper. Dr. Neuwirth is obviously an economically comfortable individual. We cannot imagine a businessman-doctor who would not pay an additional insurance premium to cover his collection when he is already paying $260.00 a year for storage alone, if the insurance coverage option were called to his attention. It is apparent that The Security Center, in light of its other advertising, has at least a duty to call the limitation of liability and additional insurance option to the attention of its depositors. The hard question, however, is whether a statement on the front side of the receipt providing “This receipt is subject to the terms and conditions printed on the reverse hereof” constituted sufficient notice of the limitation of liability clause on the reverse. The trial judge apparently found that this did not specifically call the limitations of liability clause to the depositor’s attention. This appears to be a correct credibility call.
Turning to defendant’s third specification of error, it should be noted that if we were to apply the Unfair and Deceptive Trade Practices ... act, we would probably find a violation. Plaintiff, however, has not appealed so we cannot increase the amount awarded. In light of previous discussion, we need not address this issue as it does not change the outcome below.
Turning to the last issue, defendants argue that while the judgment provides for "... interest from judicial demand ...” this phrase is incorrect. We agree. R.S. 13:4203 provides for interest from the date of judicial demand in tort cases. The instant case, however, is one in contract and as such interest runs from the time the debt becomes due. C.C. Art. 1938. In the case of an unliquidated claim, the debt is due from the time it is ascertainable. Roques v. Alfonso, 399 So.2d 1294 (App. 4th, 1981). In the instant case, the parties stipulated the amount as $15,000.00 on May 23, 1984 (Tr. p. 4). Accordingly, the amount was ascertainable on May 23, 1985. But was the debt due on that date? We think not. We find that the debt was not due until the date of judgment, namely June 18, 1985. Accordingly, we amend the judgment below to provide as follows and, as amended, it is affirmed:
“Judgment is rendered in favor of plaintiff and against SCL Limited Partnership in the sum of $15,000.00 with interest from judgment and costs.”
AMENDED AND AFFIRMED.
SCHOTT, J., dissents with written reasons.

. All of the articles admitted refer to "The Oreck group of Orlando, Fla."

. We do not know if this was a sale of the business "The Security Center” or just the sale ed the land and building or both.