513 So.2d 867 (1987)
MINI TOGS PRODUCTS, INC., Plaintiff-Appellee,
v.
Karl Mike WALLACE, et al., Defendants-Appellants.
No. 19003-CA.
Court of Appeal of Louisiana, Second Circuit.
September 23, 1987.
Rehearing Denied October 22, 1987.
Writs Denied November 30, 1987.
*868 Joe D. Guerriero, Monroe, for Mini Togs Products, Inc.
Blackwell, Chambliss, Hobbs & Henry by James A. Hobbs, West Monroe, for Bobby Russell Const. Co.
Bell, Faller, West & Cooper by David S. Bell, Baton Rouge, for Commercial Union Ins. Co.
Before HALL, C.J., and MARVIN and FRED W. JONES, Jr., JJ.
HALL, Chief Judge.
Suit was filed by Mini Togs Products, Inc. (Mini Togs) against Bobby Russell Construction Company, Inc. (Russell), Commercial Union Insurance Company (Commercial Union) and Karl Mike Wallace seeking damages for the failure to perform a building contract in a workmanlike manner. The trial judge granted judgment in favor of Mini Togs and against defendants, Commercial Union and Russell in the sum of $321,632.05 with legal interest from judicial demand. Attorney's fees in the amount of $107,210.64 were awarded based on 33 1/3% of the principal amount of the judgment. From this judgment, Commercial Union appealed suspensively limited to the question of whether legal interest should accrue from judicial demand or from the date of judgment. Russell appealed devolutively. For reasons set forth in this opinion, we affirm the judgment of the district court.

ASSIGNMENTS OF ERROR
Five assignments of error have been raised on appeal. Commercial Union has limited its appeal to assignment of error 3. The assignments of error present the following issues:
(1) Whether the trial court abused its discretion in awarding damages to the plaintiff.
(2) Whether plaintiff is entitled to any interest on its claims since none was claimed or prayed for.
(3) Whether the trial court erred in awarding legal interest from the date of judicial demand rather than from the date of judgment on damages awarded arising out of the contractor's defective performance of a building contract.
(4) Whether an attorney's fee fixed in the amount of 33 1/3% of the damage award, or $107,210.64, is reasonable.
(5) Whether legal interest should have been added to the offset of $67,378.00 for the balance due on the contract price against the amount owed to the plaintiff to correct defects.
Facts
On December 29, 1980, Mini Togs Products, Inc. entered into a contractual agreement with Russell for the construction of a building to be located at 2813 DeSiard Street in Monroe, Louisiana for the price of $575,245.00. Russell was to perform all of the work required for the construction of the building. The contract also stipulated that in the event of default of any terms of the contract, the defaulting party would pay all costs and expenses, including a reasonable attorney's fee incurred in enforcing the contract or in recovering damages *869 for its breach. Commercial Union subsequently bound itself as surety for Russell in the full amount of the construction contract.
On April 14, 1982, Mini Togs filed suit seeking damages in the amount of $2,027,375.00 from Karl Mike Wallace, Russell and Commercial Union severally and in solido for the faulty construction of the building. Karl Mike Wallace, as engineer and designer of the building, was subsequently dismissed from the suit upon mutual consent of the parties. Mini Togs alleged numerous defects in the construction of the building. Among these were: defects in the footings, both interior and exterior; defective floor slabs; inadequate structural steel beams; improper welds on the plates at the beams slices; inadequate steel supporting columns; improper bolted connections from the steel roofs to the columns; improper painting of the steel members and that these defects will cause other repairs and/or labors consisting of additional painting and movement of walls; and replacement of entire sections of the building. The defendants basically denied all the plaintiff's allegations and Russell reconvened claiming that plaintiff still owed $67,378.00 which represented the balance due under the original contract.
After trial, the district court determined that the Mini Togs building contained substantial defects. The amount necessary to remedy the defects totalled $299,238.50 plus an 8% overhead or margin of $23,939.08, a 12% profit of $35,908.62, and a 10% engineering fee of $29,923.85, or a total of $389,010.05. Applying a credit of $67,378.00 for the balance due on the contract withheld, the court awarded $321,632.05, plus interest from judicial demand. The court also awarded an attorney's fee of 33 1/3% of the $321,632.05 principal award, or $107,210.64.
While a motion for new trial was pending, Commercial Union partially settled the judgment with the plaintiff, Mini Togs, whereby the parties agreed that all the legal issues giving rise to the judgment and merged therein were accepted as being final, except the issue of from what date interest runs on the principal amount of the judgment, that is, from date of judicial demand or from date of judgment. The amount of interest at issue is stipulated to be $166,000. Commercial Union subsequently suspensively appealed on the above limited issue which is before the court.[1] Russell appealed devolutively.
Assignment of Error 1
Russell contends that the trial court abused its discretion in awarding damages to the plaintiff. Appellant admits that there are defects, but takes issue with the trial court's findings that $389,010.05 is required to make the corrections.
Russell urges that on the trial of the matter, third party contractors testified that they would and could make all corrections necessitated by the improper design, as outlined by plaintiff's engineer, for the total sum of $112,900.00. He submits that the contractors presented by him were all very qualified in their field and all agreed under oath that they would undertake the job of correcting the defects in plaintiff's building for a set price.
Russell states that the test is how much it would take to complete the building in a good, workmanlike manner. While we agree with the test stated, we do not agree that the trial court abused its discretion when it determined that the cost of correcting the defects was $389,010.05. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact made by the trial judge who has an opportunity to hear and see the witnesses testify, should not be disturbed upon appeal in absence of manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Company, 283 So.2d 716 (La.1973); Caldwell v. Texas Industries, Inc., 441 So.2d 472, 478 (La.App. 2d Cir.1983).
The trial judge made extensive findings of fact following the trial on the merits.
*870 He stated that he had heard from various experts and noted that their testimony conflicted. His written reasons delineated the areas which needed repair or replacement in order to make the plaintiff whole. These areas included: telephone removal and replacement; computer removal; repair and replace footings; under pinnings; floor slab removal and repair; structural steel work and correction; exterior wall and repair; interior wall work; electrical work and miscellaneous painting. He recognized the inclusion of equipment rental costs of moving, dust shields and various sundry-related expenses within the cost estimates. He further stated that testimony revealed that there was an 8% overhead and a 12% profit that had to be included. An engineering fee of 10% was also added.
A review of the record reveals that the plaintiff's experts were very thorough in their preparation of estimates for the trial court's consideration. Of particular importance was the testimony of Henry David Gullette, manager of technical services for Breck Construction Company. Other than a Bachelor of Science degree in building construction, he had considerable experience in price estimation. His experience was exemplified through the character of the evidence presented to the court. His estimates included a detailed analysis of the materials, man-hours and equipment necessary for the repair of the Mini Togs complex. His testimony demonstrated his knowledge of the defects in the building and what was necessary to bring it up to standards.
The defendant's witnesses did not display the same amount of knowledge concerning the defects in the building. Bobby Russell testified that Bentley & Sons of Atlanta, Georgia could put a top cap on the concrete for $2.50 per square foot. He did not know what type of dust protection was included in the price. M.D. Bamburg's bid of $112,900.00 was submitted on a one page report. As a general contractor he had considerable experience in the construction of pre-engineered steel buildings but he did not prepare a detailed analysis for the repair of the Mini Togs complex. He used the computation of plaintiff's witness for the price of removal and replacement of exterior footings. His testimony revealed that he intended to remove and replace the paved area at each footing for less than $25.00 each. He did not have the breakdown for the amount of concrete necessary for the replacement of the paved areas. Although Mr. Bamburg had a breakdown for the amount necessary to replace the interior footings, he did not know the number of man-hours necessary to clean up and haul out the debris. Mr. Bamburg also gave an estimate of $500.00 to tighten only visibly loose bolts. He did not know the number of loose bolts which required tightening. Mr. Bamburg's estimate did not include: removal of the partition wall between Howards and Mini Togs, removal of metal racks, removal of interior wall at the computer area, telephone removal and replacement, dust protection, computer removal, or electrical work. The evidence submitted by Mr. Bamburg was not very detailed and did not include all of the areas found by the trial judge to be necessary for the repair of the Mini Togs complex. It necessarily follows that the $112,900.00 bid submitted by Mr. Bamburg did not include all of the repairs necessary to complete the building in a good and workmanlike manner.
The record reveals that there was conflicting testimony. The trial judge, however, heard all the testimony and made personal inspections. The burden of proof was upon the plaintiff to establish the sum of money necessary for the building to be completed in a good workmanlike manner. The court below was satisfied with the evidence presented and its decision may not be disturbed on appeal unless it was manifestly erroneous or clearly wrong. Arceneaux v. Domingue, supra, at page 1333. The trial judge assessed the credibility of all experts presented. It has not been demonstrated that the trial judge's decision was manifestly erroneous or clearly wrong.
Assignment of Error 2
Appellant Russell contends that the trial court erred in awarding legal interest on the amount of the judgment because the plaintiff did not pray for interest in the original petition or in supplemental and *871 amending petitions. Cited in support of this argument are LSA C.C.P. Art. 1921 and numerous cases which have interpreted the Code of Civil Procedure Article and its source provision, Code of Practice Art. 553, as requiring a specific prayer for legal interest as a prerequisite for an award thereof. See Succession of Mulqueeny, 253 La. 595, 218 So.2d 607 (1969); Cerniglia v. City of New Orleans, 234 La. 730, 101 So.2d 218 (1958); Troquille v. LaCaze's Estate, 222 La. 611, 63 So.2d 139 (1953); Town of Vinton v. Lyons, 131 La. 673, 60 So. 54 (1912); Louisiana Resources Company v. Noel, 499 So.2d 1016, 1022 (La.App. 3d Cir.1986); Anthony v. New Orleans Public Service, Inc., 480 So.2d 440, 442 (La.App. 4th Cir.1985) writ denied 482 So.2d 628 (La.1986); Shell Pipe Line Corporation v. Sarver, 442 So.2d 884 (La.App. 3d Cir.1983); Lake Charles Harbor and Terminal District v. Prestridge, 182 So.2d 334 (La.App. 3d Cir.1966).
LSA-C.C.P. Art. 1921 provides:
The court shall award interest in the judgment as prayed for or as provided by law.
The official revision comment following Article 1921 states that the article retains the requirement of Code of Practice Art. 553 that interest may be awarded only if prayed for and that the phrase "as provided by law" covers the exception in the case of tort claims where interest attaches automatically without being prayed for. The comment also states that the phrase refers to the articles of the Civil Code and to LSA-R.S. 13:4203 which provides for interest on ex delicto damage judgments from date of judicial demand.[2]
Article 553 was more specific in its requirement of a prayer for legal interest than is Article 1921. Article 1921 provides for an award of interest as prayed for or as provided by law, indicating that it is not necessary to pray for interest where such is provided by law, that is, by legislative enactment.
Pleading requirements were generally liberalized by the Code of Civil Procedure adopted in 1960. LSA-C.C.P. Arts. 862, 865, 5051; Paxton v. Ballard, 289 So.2d 85 (La.1974).
LSA-C.C.P. Art. 862 provides in part:
"... a final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings and the latter contain no prayer for general and equitable relief."
In Mathews v. Mathews, 415 So.2d 234, 237 (La.App. 2d Cir.1982), this court awarded legal interest from the due date of child support payments although plaintiff had not specifically prayed for interest, citing LSA-C.C.P. Arts. 1921 and 862.
In Alexander v. Burroughs Corporation, 359 So.2d 607 (La.1978), the court awarded legal interest from the date a debt became due although the plaintiff had prayed for interest only from the date of judicial demand. The court held:
"It might be argued that, since plaintiffs only prayed for interest from date of judicial demand, they should be so limited. See B. Segall Company, Inc. v. Trahan, 276 So.2d 340 (La.App. 2d Cir.1973), rev'd on other grounds, 290 So.2d 854 (1974). The appropriate response is the same as found in defendant's argument in brief on the issue of whether a credit for the buyer's use should be allowed absent a prayer for it. C.C.P. 862 provides that a final judgment shall grant the relief a party is entitled to, even if he has not demanded such relief in his pleadings."
*872 This circuit followed Alexander v. Burroughs Corporation in Fabiano v. Bryan, 438 So.2d 719 (La.App. 2d Cir.1983), holding that "A party's recovery of legal interest is not limited by his prayer for relief."
The object of pleadings is to give fair notice to the defendant of the plaintiff's claim and the relief he seeks. Paxton v. Ballard, supra; Townsend v. Cleve Heyl Chevrolet-Buick, Inc., 318 So.2d 618 (La.App. 2d Cir.1975). The code articles and statutes providing for legal interest themselves provide fair notice that legal interest is due on sums sued for. Certainly every plaintiff seeks legal interest as provided by law and every defendant is aware of that even though by oversight a specific prayer for legal interest is not made. This is illustrated by the present case where no one objected to the inclusion of legal interest in the judgment until someone noticed after the appeals were taken that the plaintiff had not specifically prayed for interest.
Recognizing that we depart from a long line of cases to the contrary, we adhere to our holding in Mathews which we believe to be consistent with the code articles and the more recent cases dealing with pleading requirements. A judgment may and should include an award of legal interest on the principal amount of the judgment where legal interest is provided by code article or statute even though legal interest was not prayed for.
Former LSA-C.C. Art. 1938 (applicable to this case filed in 1982; see present LSA-C.C. Art. 2000) provides for legal interest on debts from the time they become due and LSA-C.C. Art. 2924 provides for legal (judicial) interest on all sums which are the object of a judicial demand. Thus legal interest on the sum demanded and awarded in this case is provided by law. The judgment correctly awarded legal interest as provided by law even though the plaintiff had not specifically prayed therefor.
Assignment of Error 3
Appellants Russell and Commercial Union contend that legal interest on the principal amount of the judgment should run from date of judgment instead of date of judicial demand. Commercial Union limited its appeal to this issue. Appellants contend that liability was uncertain and the damages sought in this case were unliquidated and unascertainable until determined by judgment of the court after trial. Therefore, it is argued, legal interest should not attach until date of judgment. Several contract cases are cited where legal interest was awarded only from date of judgment.[3]
Appellee contends that the judgment correctly awards legal interest from date of judicial demand, citing numerous contract cases where interest was awarded from date of judicial demand or an earlier date.[4]
*873 Although the issue as presented to us in this case is whether legal interest should run from date of judicial demand or from date of judgment, neither of those dates are specifically mentioned in the codal articles providing for legal interest on debts or claims arising out of contracts. Cases involving disputes over the time of commencement of legal interest have often been resolved by reference to the time the debt was due, or when the obligor was put in default, or when the claim became liquidated or ascertainable. Often the dispute has been whether legal interest commenced to accrue upon judicial demand or at an earlier date.
The most recent decision of the Louisiana Supreme Court dealing with legal interest on a claim arising out of a contractual relationship is Alexander v. Burroughs Corp., cited earlier in this opinion. We read the decision in that case as holding that a claim arising out of a contract, whether liquidated or not, bears legal interest from judicial demand or from such earlier date when the claim became ascertainable and due.
The plaintiff in that redhibitory action sought return of the purchase price, damages, expenses and attorney's fees. The court of appeal awarded legal interest from date of judgment and the issue of whether interest should run from date of judicial demand or date of judgment was presented to the supreme court on the plaintiff's writ application. After analyzing the codal articles providing for contract damages and legal interest thereon, and earlier cases which held that sums due on contracts bear legal interest from judicial demand even though unliquidated, the court held that plaintiff's claim was ascertainable on the date of formal demand for cancellation of the purchase when defendant was put in default and interest should run from that date rather than from date of judgment or date of judicial demand. The court contrasted this contract redhibition claim with a action in quantum meruit "where the amount is not ascertainable until the date of judgment."
In using the term "ascertainable" the court did not mean that the precise amount of the claim need be liquidated or established without dispute in order for legal interest to commence in a contract claim. In the Alexander case the amount of recovery was in dispute throughout with the amount awarded by the district court being changed by the court of appeal and then again by the supreme court. What was meant was that a debt or claim for the payment of money or damages under a contract is ascertainable and becomes due on the date an active violation occurred or the obligor was put in default, which can be earlier but never later than judicial demand, and legal interest runs from that date.
The holding of the Alexander case is made clear by the court's analysis of the code articles and earlier cases dealing with legal interest on contract claims:
"One of the incidents of the obligations of contracts is that the one who violates those obligations is liable for damages `which the other party has sustained by his default.' C.C.1930. Damages are due `from the moment' of an active violation *874 of a contract (C.C.1932) and from `the time that the debtor has been put in default' when the breach has been passive. C.C.1933. A debtor may be put in default `either by the commencement of a suit, by a demand in writing ...' or in other ways. C.C.1911. The damages due for delay in the performance of an obligation to pay money are called interest. C.C.1935. `All debts shall bear interest at the rate of seven per centum per annum from the time they became due, unless otherwise stipulated.' C.C.1938.
The decisions involving interest on sums recovered by suit are naturally myriad and because of their great number, if for no other reason, inconsistent. There is, however, a thread of consistency among the cases. Article 554 of the Louisiana Code of Practice of 1825 provided that interest should not run on accounts or unliquidated claims, but was repealed by La.Acts 1839, No. 53 § 1. This Court once commented,
`We have uniformly held that, since the passage of that act, all sums due on contracts bear interest from judicial demand, even where none has been stipulated, and the demand is unliquidated.' Sullivan v. Williams, 2 La.Ann. 876, 878 (1847).
See also Petrie v. Wofford, 3 La.Ann. 562 (1848); Calhoun v. Louisiana Materials Co., 206 So.2d 147, 151-52 (La.App. 4th Cir.1968), writ denied, 251 La. 1050, 208 So.2d 324 (1968); Friede v. Myles Salt Co., 177 So. 105, 108 (Orl.La.App.1937)."
Applying this analysis to the instant case, defendant is liable to plaintiff for damages sustained by defendant's default. These damages were due from the moment of active violation of the contract or from the time defendant was put in default which was no later than the commencement of the suit. Defendant's debt or obligation to pay money damages bears legal interest from the time the damages were due.
The same result would be reached under the Civil Code articles on obligations as revised effective January 1, 1985. An obligor is liable for the damages caused by his failure to perform a conventional obligation. LSA-C.C. Art. 1994. Damages for delay in the performance of an obligation are owed from the time the obligor is put in default and other damages are owed from the time the obligor has failed to perform. LSA-C.C. Art. 1989. One of the ways an obligee may put an obligor in default is by filing suit for performance. LSA-C.C. Art. 1991. For delay in performance of the obligation to pay damages, legal interest on the amount of damages is payable from the time the damages were due. LSA-C.C. Art. 2000.

Hicks v. Rucker Pharmacal Co., Inc., 367 So.2d 399 (La.App. 2d Cir.1978) writ denied 369 So.2d 1360 (La.1979) is consistent with our interpretation of the Alexander opinion expressed herein. In that suit for unliquidated breach of contract damages, we cited former LSA-C.C. Art. 1938 and Alexander in holding that debts bear interest from the time they become due and that an unliquidated claim becomes due from the time it becomes ascertainable. There it was determined that the damages became due and ascertainable when the defendant actively breached the contract and legal interest commenced on that date which was, of course, prior to judicial demand. The measure and amount of damages was in dispute throughout the case.
Land and Offshore Company v. Martin, 469 So.2d 1177 (La.App. 3d Cir.1985) is also consistent. In that suit for damages for breach of contractual warranties and guaranties, the court of appeal held that the district court erred in awarding only post-judgment interest and amended to award legal interest from date of judicial demand. Citing Alexander the court held:
"... All sums due on a contract bear interest at least from the time of judicial demand."
See also Heap v. Weber Construction Company of Louisiana, Inc., 407 So.2d 799 (La.App. 4th Cir.1981) in which the court affirmed a judgment awarding interest from judicial demand in a quanti minoris action, citing Alexander and rejecting defendant's contention that judicial interest *875 should run only from date of judgment because the claim was unliquidated and not certain until judgment.
Other court of appeal decisions subsequent to Alexander express a contrary view. Roques v. Alfonso, 399 So.2d 1294 (La.App. 4th Cir.1981), Lone Star Industries v. American Chemical, 461 So.2d 1063 (La.App. 4th Cir.1984) writ denied 465 So.2d 738 (1985), and Neuwirth v. McDonald Sales, 499 So.2d 350 (La.App. 4th Cir.1986) writ denied 500 So.2d 427 (1987) each held that an unliquidated contract claim does not become due and ascertainable until date or judgment and that legal interest runs only from that time. The same result was reached in U-Serve Petroleum & Investments, Inc. v. Cambre, 486 So.2d 821 (La.App. 1st Cir.1986) writ denied 489 So.2d 924, reconsideration not considered 491 So.2d 18 (1986).
We disagree with these latter decisions, believing that they represent an erroneous interpretation of Alexander and the applicable code articles.
We hold that legal interest is due at least from date of judicial demand on a claim for damages arising out of breach of contract, regardless of whether the precise amount of the claim is unliquidated, disputed or not ascertainable with certainty at the time suit is filed. The judgment in this case awarding legal interest from date of judicial demand is correct.
Assignment of Error 4
The trial court awarded attorney's fees equal to 1/3 of the net principal amount of the $321,632.05 judgment, or $107,210.64. Appellant Russell contends that the fee is unreasonable, particularly since liability was stipulated and the only issue was quantum. Appellant further contends that the record does not contain evidence of the factors to be considered in determining the reasonableness of the fee. Appellant concedes that an reasonable attorney fee is due under the terms of the contract but asks that the case be remanded for a hearing on the attorney fee issue.
The building contract provided for payment of a reasonable attorney fee in the event of default. Plaintiff's officer testified at trial that he had agreed to pay his attorney a contingent fee of 1/3 of the amount recovered. He also testified that his attorney had spent several hundred hours on the case and that he and the attorney often worked until late in the night on the case. There was no other evidence specifically relating to the attorney fee but the record fairly well demonstrates the nature and extent of the services rendered.
The issue under both the contract between the litigating parties and the inherent power of the court to regulate attorneys fees is whether the amount awarded by the trial court is reasonable.
An attorney may enter into a contingent fee contract with a client so long as it does not result in the attorney collecting a fee that is clearly excessive or which has not been earned. Saucier v. Hayes Dairy Products, Inc., 373 So.2d 102 (La.1979). An award of attorneys fees may be based on the litigant's contingency fee contract where the resulting amount is reasonable. Lafleur v. John Deere Co., 491 So.2d 624 (La.1986); Pillow v. Board of Commissioners, 425 So.2d 1267 (La.App. 2d Cir.1982), writ denied 445 So.2d 1225 (1984).
In determining and fixing attorneys' fees the court must adhere to the Code of Professional Responsibility which prohibits a lawyer from collecting a fee that is in excess of a reasonable fee and sets forth the factors to be considered as guides in determining the reasonableness of a fee. Moody v. Arabie, 498 So.2d 1081 (La.1986).
DR 2-106(B) sets forth the following factors:
(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.
(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
(3) The fee customarily charged in the locality for similar legal services.
*876 (4) The amount involved and the results obtained.
(5) The time limitations imposed by the client or by the circumstances.
(6) The nature and length of the professional relationship with the client.
(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.
(8) Whether the fee is fixed or contingent.
These rules and standards permit a court to consider an attorney-client contract among other factors but prohibit it from being bound by such an agreement in determining reasonable attorneys' fees. Moody v. Arabie, supra.
A trial judge is vested with great discretion in setting a reasonable attorney's fee. An award should not be modified on appeal absent a showing of abuse of discretion. Pillow v. Board of Commissioners for the Fifth Louisiana Levee District, supra.
Although the record does not contain the attorney's time records, the client's estimate of several hundred hours seems reliable. Obviously, pretrial preparation was extensive. The issues may not have been novel, but were difficult. Although some defects were admitted, it was necessary for the plaintiff to establish most of the defects and the costs of correcting them. Determination of the extent of the defects and the costs to correct them and working with the construction experts required development of expertise in this specialized technical area by the attorney. The case was skillfully and professionally presented. Trial lasted three days. There is no indication that other employment was precluded. One-third contingency fees are common in cases of this kind. The amount involved was substantial and the result very successful with a recovery including interest of almost $500,000.00. There do not appear to have been time limitations and there is no indication of the length of the professional relationship with the client. The trial court and this court are aware that the attorney has many years of experience and has a good reputation and ability. Finally, the fee was contingent with no assurance of recovery and the risk of performing substantial legal services with minimal or no fee.
After considering all factors, we conclude that the trial court's award of one-third of the net amount recovered, exclusive of interest, is not unreasonable, excessive, nor an abuse of discretion.
Assignment of Error 5
Appellant Russell contends that the trial court erred in not adding legal interest of $37,731.68 to the $67,378.00 balance due on the contract price allowed as a set off against the cost of correcting the defects. Appellant argues that the entire amount of the contract price was due 30 days after completion and that legal interest was due from that time until the date of judgment.
The short answer to this argument is that because of the defective construction defendant was entitled to receive the balance of the contract price only if the balance exceeds the cost of correcting the defects. Plaintiff did not owe the defendant performance when the defendant had rendered defective performance. Since the cost of correcting the defects substantially exceeded the balance due on the contract compensation took place by operation to the extent of the lower amount, LSA-C.C. Art. 1893, and no debt was owed appellant. Hence, there was no debt due to which legal interest could attach. Former LSA-C.C. Art. 1938; present LSA-C.C. Art. 2000.
DECREE
The judgment of the district court is affirmed at appellants' cost.
AFFIRMED.

ON APPLICATION FOR REHEARING
Before LINDSAY, HALL, MARVIN, FRED W. JONES and SEXTON, JJ.
Rehearing denied.
NOTES
[1] Commercial Union subsequently filed a motion to enlarge the points on appeal which this court denied, ruling: "Appellant is allowed to appeal only those points originally raised and is bound by the terms of its Partial Settlement of Judgment Agreement."
[2] Appellant correctly argues that LSA-R.S. 13:4203 is not applicable in this case because this is not a judgment "sounding in damages ex delicto" within the meaning of that special statute. The classical distinction between "damages ex contractu" and "damages ex delicto" is that the former flow from the breach of a special obligation contractually assumed by the obligor where the latter flow from the violation of a general duty owed to all persons. The statute was intended to apply only to judgments based primarily on tort liability and historically regarded as arising ex delicto. Davis v. LeBlanc, 149 So.2d 252 (La.App. 3d Cir.1963). Damages in the present case were awarded because of a breach of a specific contractual duty to construct a building free from defects in an action historically regarded as arising ex contractu.
[3] Cases awarding interest from date of judgment: Neuwirth v. McDonald Sales, 499 So.2d 350 (La.App. 4th Cir.1986) writ denied 500 So.2d 427 (1987); U-Serve Petroleum & Investments, Inc. v. Cambre, 486 So.2d 821 (La.App. 1st Cir.1986) writ denied 489 So.2d 924, reconsideration not considered 491 So.2d 18 (1986); Lone Star Industries, Inc. v. American Chemical, Inc., 461 So.2d 1063 (La.App. 4th Cir.1984) writ denied 465 So.2d 738 (1985) (from date of judgment on disputed or unliquidated portion of judgment but from date of judicial demand on admitted portion of judgment.); Drs. Brown, Carter & Sauls v. Sauls, 418 So.2d 706 (La.App. 3d Cir.1982) writ denied 422 So.2d 425 (1982) (amounts not due until after date of judgment); Roques v. Alfonso, 399 So.2d 1294 (La.App. 4th Cir.1981); Consolidated Sewerage District of the City of Kenner v. Schulin, 387 So.2d 1369 (La.App. 4th Cir.1980) (expropriation case); White v. Rimmer & Garrett, Inc., 360 So.2d 914 (La.App. 3d Cir.1978) (from completion of contract after judicial demand and prior to judgment); Binswanger Glass Co. v. Taylor, 284 So.2d 367 (La.App. 2d Cir.1973) (date of trial); Quinn Construction Co., Inc. v. Savoie, 207 So.2d 229 (La.App. 4th Cir.1968) writ denied 252 La. 117, 209 So.2d 42 (1968).
[4] Cases awarding legal interest from date of judicial demand or earlier: Alexander v. Burroughs Corporation, 359 So.2d 607 (La.1978); Communications Workers of American AFL-CIO Local 10414 v. Conley, 505 So.2d 894 (La.App. 2d Cir.1987); Meeks v. Huntington School, Inc., 489 So.2d 435 (La.App. 3d Cir.1986); Salem v. Maise, 483 So.2d 1192 (La.App. 4th Cir.1986) writ denied 486 So.2d 752 (1986); United States Fidelity & Guaranty Company v. Southern Excavation, Inc., 480 So.2d 920 (La.App. 2d Cir.1985) writ denied 481 So.2d 1337 (1986); Evans v. First of Georgia Insurance Company, 479 So.2d 568 (La.App. 1st Cir.1985); Land and Offshore Company v. Martin, 469 So.2d 1177 (La.App. 3d Cir.1985); Lone Star Industries, Inc. v. American Chemical, Inc., 461 So.2d 1063 (La.App. 4th Cir.1984) writ denied 465 So.2d 738 (1985) (on admitted portion of judgment); First Federal Savings & Loan of Natchitoches v. American Bank & Trust Company, Coushatta, 461 So.2d 341 (La.App. 2d Cir.1984) (no discussion); National Roofing & Siding Co., Inc. v. Gros, 433 So.2d 403 (La.App. 4th Cir.1983); Millspaw v. Knight, 430 So.2d 1207 (La.App. 1st Cir.1983); Futorian Corporation v. Marx, 420 So.2d 702 (La.App. 4th Cir.1982); Heap v. Weber Construction Company of Louisiana, Inc., 407 So.2d 799 (La.App. 4th Cir.1981); Teledyne Movible Offshore, Inc. v. C & K Offshore Company, 376 So.2d 357 (La.App. 3d Cir.1979); Hicks v. Rucker Pharmacal Company, 367 So.2d 399 (La.App. 2d Cir.1978) writs denied 369 So.2d 1360, 369 So.2d 1361 (1979); North American Contracting Corporation v. Gibson, 327 So.2d 444 (La.App. 3d Cir.1975) writ denied 332 So.2d 280 (1976) (no discussion); Saragusa v. Dipaola, 290 So.2d 766 (La.App. 1st Cir.1974) writ denied 293 So.2d 185 (1974); B. Segall Company v. J.C. Trahan, 276 So.2d 340 (La.App. 2d Cir.1973) reversed 290 So.2d 854 (1974); Calhoun v. Louisiana Materials Co., 206 So.2d 147 (La.App. 4th Cir.1968) writ denied 251 La. 1050, 208 So.2d 324 (1968).