COTTON BROTHERS BAKING
COMPANY, INC., Plaintiff–
Appellee,

v.

INDUSTRIAL RISK INSURERS,
Defendant–Third–Party
Plaintiff–Appellant,

v.

BAKER PERKINS FOOD MACHINERY,
INC., Third–Party Defendant–
Appellant.

COTTON BROTHERS BAKING
COMPANY, INC., Plaintiff–
Appellee,

v.

BAKER PERKINS, INC.,
Defendant–Appellant.

BAKER PERKINS, INC.,
Plaintiff–Appellant,

v.

COTTON BROTHERS BAKING
COMPANY, INC., Defendant–
Appellee.

No. 90–4128.

United States Court of Appeals,
Fifth Circuit.

Sept. 13, 1991.

As Corrected on Denial of Rehearing
Oct. 10, 1991.

Esmond Phelps, II, Dorothy H. Wimberly, Marc D. Winsberg, Stone, Pigman, Walther, Wittman & Hutchinson, New Orleans, La., for Baker Perkins, Inc. & Baker Perkins Food Machinery.

Howard B. Gist, Jr., George C. Gaienne, III, Gist, Methvin, Hughes & Munsterman, Alexandria, La., Robert M. Wattson, Lawrence Zelle, Zelle & Larson, Minneapolis, Mn., for Industrial Risk Ins.

Dando B. Cellini, Henri Wolbrette, III, Dermot S. McGlinchey, McGlinchey, Stafford, Mintz & Cellini, New Orleans, La., Frederick B. Alexius, Provosky, Sadler & Delaunay, Alexandria, La., for appellees.

Before POLITZ, WILLIAMS, and JONES, Circuit Judges.

POLITZ, Circuit Judge:

This appeal poses complex damages and liability issues resulting from a fire at Cotton Brothers Baking Co., Inc., a bakery in Alexandria, Louisiana, on Friday, February 13, 1981. Multiple suits resulted. The matters were tried in part by a jury and in part by the bench and the ultimate judgments are now before us on appeal. For the reasons assigned we modify those judgments and, as modified, affirm.

*Background*

At the time it was severely damaged by fire, Cotton Brothers Baking Co., Inc. was one of eight subsidiaries of Cotton Bros., Inc. Each subsidiary was independently incorporated and occupied a single location, but the companies operated as a single integrated enterprise in the commercial baking industry. Gene Cotton served as president and CEO of the parent company and of each subsidiary, and the membership of the boards of directors of each company was identical.

The damage to the Alexandria bakery was substantial and its effect was felt throughout the Cotton Bros. organization. In order to minimize the impact on production as a whole, Cotton Bros. shifted some of the prior Alexandria production to other facilities and purchased products from competitors for resale under the Cotton label.

Cotton Bros. contacted Baker Perkins, Inc., a Michigan industrial baking supplier, about replacement of the two principal pieces of equipment destroyed in the fire, an oven and a rack proofer. After substantial negotiations and site surveys, Baker Perkins contracted with Cotton Bros. Baking Co., Inc. to install the equipment. The initial submission was an offer by Baker Perkins dated February 20, 1981, and included an accelerated installation price of $1,354,820. Another proposal, which did not have a $165,575 acceleration premium or a $159,160 replacement cost differential, contemplated a "start-up" date eight months later than that specified in the final agreement.[1] The initial offer included the following details:

SHIPPING AND INSTALLATION
SCHEDULE ACCELERATED
INSTALLATION

| | |
|---|---|
| Order Placement | 2–22–81 |
| Shipment | 5–1–81 |
| Start Erection | 6–12–81 |
| Final Shipment | 6–26–81 |
| start-up [sic] | 9–21–81 |

Schedule predicated on order placement by February 22, 1981. Any delay in order placement beyond that date will directly effect [sic] final dates of shipment, erection and final start-up beyond those listed above.

Despite the timing calling for order placement by February 22, the proposal was accepted verbally by Cotton Bros. on March 6, 1981, followed by a signing on

---

1. Some equipment was replaced rather than repaired. "Start-up" refers to resumption of baking production.

March 19. This final submission constituted a counter-proposal which Baker Perkins approved and accepted on May 14, 1981. Start-up actually occurred in the late spring of 1982.

Cotton Bros. also filed a claim with its insurer, Industrial Risk Insurers (IRI), under policies protecting against both fire property damage to equipment and business interruption. Significantly, the policies did not list Cotton Bros., Inc. as an insured but, instead, named three of the subsidiaries and five separate premises. The business interruption policy provided in pertinent part:

### SECTION I

A. Recovery in the event of loss hereunder shall be the ACTUAL LOSS SUSTAINED by the Insured resulting directly from such interruption of business, but not exceeding the reduction in gross earnings less charges and expenses which do not necessarily continue during the interruption of business, for only such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair or replace such described property as has been damaged or destroyed, commencing with the date of such damage or destruction and not limited by the date of expiration of this Policy. Due consideration shall be given to the continuation of normal charges and expenses, including payroll expense, to the extent necessary to resume operations of the Insured with the same quality of service which existed immediately preceding the loss.

### SECTION III

A. EXPENSES RELATED TO REDUCING LOSS.—This Policy also covers:
1. such expenses as are necessarily incurred for the purpose of reducing loss under this Policy (except expense incurred to extinguish a fire), and

2. such expenses, in excess of normal, as would necessarily be incurred in replacing any finished stock used by the Insured to reduce loss under this Policy,

but in no event shall the aggregate of such expenses exceed the amount by which the loss otherwise payable under this Policy is thereby reduced.

IRI, which was involved in the Cotton Bros. decision to accept the accelerated Baker Perkins contract, hired a team of accountants to audit the records of Cotton Bros. and to adjust claims arising from the interruption of business policy. Cotton Bros. also assembled a group for the same purpose, composed of in-house personnel and accountants from its retained accounting firm, Ernst & Whinney. By their own admission, neither the Ernst & Whinney personnel nor the Cotton Bros. in-house staff had any experience with interruption of business insurance claims. They relied on the expertise—and good faith—of IRI's accountants to accurately calculate those losses.

The Cotton Bros. team submitted a document to the IRI team entitled "Methodology for Computing the Cost of Business Interruption," which the district court found contained patent errors in application of business interruption insurance. IRI accepted the document without comment and made no effort to assist Cotton Bros. in correcting errors.[2] Additionally, IRI insisted that as Cotton Bros., Inc. was not a named insured, only the damages directly related to Cotton Bros. Baking Co. (the Alexandria bakery entity) could be used to calculate losses. IRI's payments to Cotton Bros. under the business interruption policy eventually totaled $3,585,761.97.

---

**2.** The methodology involved a line-item reimbursement by IRI for identifiable extra costs that were incurred as a result of the business interruption. The district court found this approach operated as nothing more than an extra expense policy, "a form of insurance coverage to reimburse the insured for specific items of extra expense over and above the normal expense which the insured incurred...." The district court further found that as early as 1970 both IRI and Cotton Bros. intended that a full and complete business interruption policy be confected, rather than an extra expense policy.

Once Cotton Bros., with IRI support, approved the accelerated purchase agreement with Baker Perkins to replace destroyed equipment, IRI substantially changed its position with respect to the amount it owed Cotton Bros., and, further, the insurance policy under which that amount was to be paid. Initially approved as a fire insurance recovery, the payment was then changed, minus the acceleration premium, into a business interruption recovery, for which IRI stood to benefit because it could take a credit against Cotton's gross earnings loss. Eventually IRI paid the lower estimate and purported to advance the remaining acceleration as an expediting expense, repayable if Baker Perkins failed to perform timely its accelerated schedule.

Several lawsuits resulted. Cotton Bros. Baking Co. sued Baker Perkins in the Western District of Louisiana for damages arising from the latter's delay in completing the installation of the oven and proofer. Baker Perkins counterclaimed for the $209,000 unpaid balance on the original contract, and other ancillary equipment installation contracts. Baker Perkins also filed an action in the Eastern District of Michigan against Cotton Bros. for an amount and under causes of action identical to its counterclaim in the parallel action. That case was transferred to the Western District of Louisiana, where Cotton Bros. counterclaimed, asserting the same claims as Cotton Bros. Baking Co. in the original action. Baker Perkins moved, *inter alia*, to dismiss all claims for damages asserted by Cotton Bros. given that the insurance contract named Cotton Bros. Baking Co. The district court promptly denied that motion, which came after three and one-half years of litigation in which Cotton Bros. had admitted Baker Perkins' allegation that the two parties had entered into a valid contract. The district court did, however, dismiss Cotton Bros. Baking Co.'s

claims against Baker Perkins. A jury determined that Baker Perkins had breached the contract, that Cotton Bros. had sustained $2,065,575 in damages resulting from the breach, and that Cotton Bros. was 35% responsible for the breach. Accordingly, the district court awarded Cotton Bros. $1,342,624 plus legal interest from the date of judicial demand in the Baker Perkins case. The district court directed a verdict in Cotton Bros.' favor in Baker Perkins' suit for $209,000.

In an action consolidated with the Baker Perkins suit, Cotton Bros. Baking Co. and Cotton Bros. brought suit in the Western District of Louisiana against IRI claiming damages under the business interruption policy. After a bench trial involving substantial taking of evidence, the trial court reformed the original insurance policy to make and include Cotton Bros., Inc., as a named insured at all relevant times, entered judgment in favor of Cotton Bros. Baking Co. and Cotton Bros. for the $324,735 "advanced" by IRI in the accelerated contract dispute, and awarded state-law insurer-delay penalties, attorney's fees, and prejudgment interest. Additionally, the court awarded Cotton Bros. $4,498,000 in damages [3] plus penalties, attorney's fees and prejudgment interest less a $427,460.67 credit to be equitably applied upon payment of IRI's judicial obligation to Cotton Bros. The credit was applied by the court based on an acceptance by Cotton Bros. that the amount ought not be classified as earnings damages. Finally, the district court ordered IRI subrogated to the Cotton Bros. recovery in the Baker Perkins action, contingent upon IRI's payment of all other obligations resolved in that litigation.

Dissatisfaction abounded. Baker Perkins and IRI timely appealed.

---

**3.** Cotton Bros. introduced evidence indicating its actual earnings were a loss of $2,535,000 and its projected earnings were $3,361,000, resulting in a reduction of gross earnings of $5,896,000. These projections were based on a business interruption period running from February 13, 1981 through September 25, 1982. The trial court, however, determined that the business interruption period terminated on May 8, 1982, when the replacement oven and proofer went into operation. The court, accordingly, adjusted the $5,896,000 figure to $4,498,000, based on proportionately reduced actual earnings of negative $1,933,926 and projected earnings of $2,564,073.

## Analysis

■ Before us are appeals, as noted, from both a bench trial and a jury trial. At the bench trial, the district court construed an unambiguous contract and awarded damages based on calculations related to that contract. Such construction presents a question of law for which our review is *de novo*. *Southern Natural Gas Co. v. Pursue Energy*, 781 F.2d 1079 (5th Cir. 1986).

### The IRI Litigation

■ IRI raises three issues on appeal. First, it asserts that the trial court erred by not crediting the $3,585,761.97 which IRI had already paid under the business interruption policy against the $4,498,000 judgment awarded below. The judgment was for claims under section IA of the business interruption policy designed to compensate Cotton Bros. for the actual loss incurred as a result of the fire. The district court had found that the $3,585,761.97 paid by IRI under the line-item methodology ought not be treated as payments for Cotton Bros.' actual loss sustained because the line-item approach was not fueled by any measure of earnings. The court thus treated the amount as costs incurred in mitigation of the net loss caused by the fire, payable under section IIIA of the policy.

In this the trial court erred. Failure to credit IRI for its prior payments would result in a double recovery by Cotton Bros. The Louisiana courts have underscored the importance of applying business interruption insurance in a manner which avoids double recovery.

We hold that the business interruption clause in the policy in this case is unambiguous. The language of the policy sets forth the formula for calculating the amount of actual loss by an insured when business is interrupted, and allows the business to remain in the same financial condition as before the loss. Although the policy is designed to protect the insured, it is also designed to prevent the insured from being placed in a *better* position than if no loss or interruption of business had occurred. *United Land Investors, Inc. v. Northern Ins. Co.*, 476 So.2d 432, 436 (La.App.1985) (emphasis original). While the methodology used did not reflect accurately the lost earnings experienced by Cotton Bros., the payments nonetheless represented compensation for lost earnings. The $4,498,-000 calculated by the trial court as the actual loss Cotton Bros. sustained includes the difference between projected earnings had there not been a fire ($2,564,073), and actual earnings during the period of business interruption (a loss of $1,933,926). The loss figure did not include the $3,585,-761.97; if it did, then actual earnings during the interruption period would be (positive) $1,651,835.97, and the reduction in gross earnings (projected minus actual) only $912,238.03.

The court would have been correct in excluding the $3,585,761.97 had an equal amount been excluded from the actual loss figure based on expenses incurred by Cotton Bros. Simply stated, if these line-item expenses were not included in the actual earnings figure, then Cotton Bros. lost $1,933,926 during the business interruption period. However, review of the record discloses no such exclusion from actual losses. Accordingly, the Cotton Bros. judgment against IRI for claims under section IA of the business interruption policy is modified to $912,238.03.

### The Accelerated Premium

■ IRI next contends that the trial court erred by awarding Cotton Bros. the $324,735 which IRI deducted from payments to Cotton Bros. for having replaced rather than repaired its oven and proofer, and for having done so at an accelerated schedule.[4] We disagree. The facts attendant to the March 6, 1981 acceptance by Cotton of IRI's draft of a proof of loss reflected IRI's willingness to pay $1,189,-

---

**4.** The amount represents the cost differential of replacement rather than repair, $159,160, plus the acceleration premium, $165,575. Cotton Bros. does not quibble with the deduction of

another $182,655, representing the cost of a cascade apparatus, equipment used to load the proofer.

245 under the fire policy, and $165,575 under the business interruption policy.[5] The fire policy figure included the $159,160 replacement cost of the oven and proofer.

Immediately after the meeting, Cotton Bros. verbally accepted the Baker Perkins proposal discussed at the March 6 meeting. We perceive no error in the district court's recounting of the subsequent facts:

> Cotton was committed. IRI then refused payment. Now Cotton was compromised. Cotton had exercised extraordinary diligence in its efforts to rebuild and restore in the shortest time as possible to the evident benefit of both IRI and itself. It had been successful in securing the contractor most capable of doing a competent job in the shortest time possible. It had settled its claim against IRI for the loss of the proofer and the oven for a sum proposed by IRI's own agent. IRI now refused to pay. Incredible!

The trial court then determined that IRI's decision to deny the coverage—and later to recast a partial payment as an "advance" on the chance of Baker Perkins' timely completion of the work—was a strong-arm attempt to deny the existence of an enforceable agreement. With respect to the $159,160 cost differential, the trial court properly, therefore, held IRI to the agreement it had forged on March 6, 1981, by awarding judgment in favor of Cotton Bros.

The acceleration premium, which the district court apparently erroneously lumped in with the fire insurance policy, should have been treated as an expediting expense, given its mitigating effect on Cotton Bros.' losses. The contractually-mandated test is not, as IRI suggests, whether the accelerated schedule was met by Baker Perkins, but, instead, whether the expense was one "necessarily incurred for the purpose of reducing loss under [the business interruption] Policy."[6] The district court found that the Cotton Bros. contract with Baker Perkins under the accelerated scheduling plan was just such an expense. IRI points to no contrary evidence. The trial court did not err.[7]

Statutory Penalties

■ In its final enumeration of error, IRI challenges the district court's assessment of a 12% statutory penalty on monies awarded to Cotton Bros. under the IRI policies. IRI contends that the district court misapplied the applicable state statute, La.R.S. § 22:658, which subjects insurers found "arbitrary, capricious, or [acting] without probable cause" to a 12% penalty plus reasonable attorney's fees, upon failure to make payment within 60 days of receipt of proofs of loss.[8] Proof of loss is defined as that point in time when the insurer has adequate knowledge of the loss. *Hart v. Allstate Ins. Co.*, 437 So.2d 823 (La.1983). The district court's assessment of penalties was based on its finding

---

**5.** *See* Notes from Insurance Meeting 6, March 6, 1981. Exhibit 122A. "Tom Simpson advised that Mr. Bud Jarratt had gotten with the IRI and they prepared another partial settlement of the claim. They have agreed to pay $531,200 on the proofer and $658,045 on the oven which totals $1,189,245."

**6.** *Cf.* R. Morrison, A. Miller & S. Paris, *Business Interruption Insurance: Its Theory and Practice* 103 (1986) (emphasis original):

> It should also be noted that, in the application of the expediting expense provision, a different timing approach may be taken than in the case of the basic business interruption loss. In the case of expediting expense, hindsight must be used because only *after the fact* is it possible to determine whether or not there was an actual savings and how much it is. This should create no problem because the two compensation provisions have entire-

ly different purposes and each stands on its own feet.

**7.** IRI's contention that Cotton Bros.' award of the $324,735 constitutes unjust enrichment is without merit. IRI argues that it advanced Cotton Bros. the funds in order to pay Baker Perkins, but that Cotton Bros. has not paid the money over to Baker Perkins. Cotton Bros. could only be unjustly enriched in the first instance to the extent that it received a judgment beyond the amount which it owes or has paid Baker Perkins. Baker Perkins and Cotton Bros. stipulate that of the $209,000 owing to Baker Perkins, only a portion relates to expediting expenses, *i.e.*, the acceleration premium. Our holding with respect to the companion Baker Perkins litigation disposes of the funds in question, leaving no party unjustly enriched.

**8.** Since amended to require payment within 30 days.

that IRI effected a "stonewalling" strategy in every aspect of its dealings with Cotton Bros. The strategy began with a continuing—and unjustified, in light of its longstanding relationship with Cotton Bros.—contention that only the accounts of the Alexandria bakery, and not Cotton Bros. *in toto,* were applicable to the business interruption loss calculations. IRI also provided little, and at times incorrect, advice to its insured on the correct methodology for calculation of business losses. The district court found that IRI's instruction to its accounting team "was intended to induce error by Cotton. The instruction was made for the illicit purpose of inhibiting and defeating Cotton's right to file any claim for earnings damages under Section IA and IIIA of the policy. The stonewall position of IRI was arbitrary, capricious, in bad faith and without probable cause." Simultaneously, the dispute regarding the Baker Perkins replacement contract was simmering, in a situation described *supra,* for which the district court specifically imputed to IRI an attempt to strong-arm its insured into an unfavorable bargaining position.

The characterization of an insurer's failure or refusal to pay is a question of fact, *Smith v. State Farm Fire & Cas. Co.,* 695 F.2d 202 (5th Cir.1983), and propriety of assessment of insurer penalties is likewise, "in part a factual determination," *United Land Investors,* 476 So.2d at 438. IRI's arguments leave us unpersuaded that the district court, sitting as the trier of fact, was clearly erroneous in its factual findings.

■ The court erred, however, in assessing statutory penalties on the entire $4,498,000 which it awarded Cotton Bros. on the business interruption policy, as well as the $324,735 awarded on the fire policy. Having modified that portion of the judgment to $912,238.03, we affirm the assessment of penalties only as applied to that amount plus the $324,735 fire policy award. In addittion, after issuance of the mandate the trial court may award attorneys fees, as it deems appropriate, on this aspect of the judgment.

Having affirmed the $324,735 in whole, however, we affirm the penalties with respect to that additional amount.

The Baker Perkins Litigation

■ In the companion action also before the court, Baker Perkins first argues that the district court erred by holding that Cotton Bros., rather than Cotton Bros. Baking Co., was permitted to recover for breach of the replacement contract. Baker Perkins correctly advances the notion that under Louisiana law a corporation is not permitted to bring a cause of action on behalf of a wholly-owned subsidiary corporation, *Eximco, Inc. v. Trane Co.,* 737 F.2d 505 (5th Cir.1984), and that there must be privity of contract for recovery for a breach. *Impressive Builders, Inc. v. Ready Mix, Inc.,* 535 So.2d 1344 (La.App. 1988). The trial court did not, however, entertain an impermissible lawsuit; instead, it properly concluded that Cotton Bros. rather than Cotton Bros. Baking Co. was the proper party to the contract. This was within the equitable powers of the district court. As the Louisiana Court of Appeal informs:

"In interpreting contractual provisions about which there exists some doubt, a court must seek the true intention of the parties, even, if to do so necessitates a departure from the literal meaning of the agreement." In such cases, the law is never so inflexible as to bind parties to a contract which neither intended.

... The established method of resolving a mutual mistake in a contract is

reformation of the agreement to reflect the true intent of the parties.

*Placid Refining Co. v. Privette,* 523 So.2d 865, 868 (citations omitted), *vacated on rehearing on other grounds,* 523 So.2d 870 (La.App.1988).

The district court's action, which came in response to a motion by Baker Perkins to amend, was appropriate in the instant case, given the underlying procedural posture of the case. The original suit was, in fact, Cotton Bros. Baking Co.'s action against Baker Perkins, an action brought in the Western District of Louisiana. Four days later, Baker Perkins brought its suit against Cotton Bros., Inc., alleging *inter alia,* a contract with the parent company and seeking recovery for the unpaid balance of the contract price.

The district court interpreted Baker Perkins' motion to amend as an eleventh-hour ploy to defeat the Cotton Bros. counterclaim (filed as a Rule 13(a) compulsory counterclaim) by disclaiming the existence of a contract it had spent three and one-half years urging in litigation. In light of Baker Perkins' longstanding business relationship with Cotton Bros., its acceptance of earlier payments for the contract from Cotton Bros. (not Cotton Bros. Baking Co.), its frequent correspondence with Cotton Bros. during the negotiations for the contract, and Baker Perkins' over-three-year delay in seeking leave to amend its complaint to change the name of the defendant, the court acted within its discretion in holding Baker Perkins to the facts it had alleged and which its defendant, Cotton Bros., candidly and appropriately had admitted. Our holding in *Hall v. Aetna Casualty and Surety Co.,* 617 F.2d 1108 (5th Cir.1980), presents an analogous situation.

There, we held that the district court did not abuse its discretion in disallowing an insurer to substantially amend its answer, mid-trial, from a position of admitting coverage under an insurance policy to one excluding coverage under a previously "overlooked" provision. "The trial judge recognized, however, that this final amendment would clearly prejudice the opposing party and simply came too late." *Id.* at 1110–11. A similar finding obtains in the instant case. As Judge Scott incisively wrote:

> In the case at bar, the plaintiff, Baker Perkins, brought suit, alleging a contract with the defendant parent corporation and sought recovery of funds due under the contract. Cotton Bros., Inc. admitted the allegation and pleaded its counterclaim which was compulsory under Rule 13(a) of the Federal Rules of Civil Procedure. The parties labored under these facts for three and a half years before Baker Perkins moved to amend its complaint to correct "a mistake" made by its Michigan counsel when naming the defendant/contracting party.
>
> We are of the opinion that Baker Perkins was well aware of who it was suing and why it was doing so.

Cotton Bros.' good faith reliance on the veracity of Baker Perkins' pleadings was well-founded; there was ample evidence that Cotton Bros. was indeed the proper party in this case.[9] We perceive no abuse of discretion in this instance.

### The Limitation of Liability Provision

■ Baker Perkins next maintains that the trial court misconstrued a limitation of liability provision in the oven and proofer contract. The provision declares:

---

9. *McKnight v. Blanchard,* 667 F.2d 477 (5th Cir. 1982), cited by Baker Perkins, is inapposite. In that inmate's civil rights action an order was entered substituting the current sheriff for his predecessor, "but retaining as party the predecessor sheriff originally sued." The inmate complained only of a clerical change in the caption of the case, "apparently fearing that the 'et al.' does not include the 'Lubbock County Jail.'" We deemed his contention meritless, holding "The administrative captioning of the suit obviously has no effect on what cause of action and what parties are (or are not) joined in the substantive allegations of the pleadings." *Id.* at 482. In the instant case, Baker Perkins is *not* being held to its original pleadings merely on the basis of the caption given the case. Instead, its three-plus years litigation with the facts it alleged, and which Cotton Bros. *admitted* and *relied upon* are the operative concerns of the court.

WARRANTY

Seller warrants the apparatus to be as specified herein; and will correct any defects in the apparatus which develop under normal and proper use and maintenance within twelve months after erection (defective parts to be replaced F.O.B. factory), provided Buyer shall have given prompt notice to Seller of any such defects. The foregoing warranties are EXPRESSLY IN LIEU OF ALL WARRANTIES WHATSOEVER, EXPRESSED, IMPLIED AND STATUTORY, INCLUDING, WITHOUT LIMITATION, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS. Seller will in no event be liable to Buyer or others for any direct, indirect, special or consequential damages or loss of production or loss of profits resulting from any cause whatsoever, including but not limited to defective workmanship or materials or any delay, act, error or omission of Seller. Seller shall be notified of, and reserve the right to be present at, any test which Buyer may make in relation to operation. All equipment manufactured by others, but included as part of this contract, will be subject to standard warranty as issued by their manufacturer.

The district court held that this disclaimer was effective only with respect to redhibitory vices, and not for the purpose urged by Baker Perkins, *i.e.*, exclusion of claims for lost profits flowing from delay in performance of the contract. We agree. Baker Perkins reurges and underscores its contention that the presence of the three words "or any delay" in the warranty section of the contract essentially forecloses discussion on this point. We disagree. The Louisiana Court of Appeal has concisely stated the fundamental rules of contract construction prevalent in Louisiana:

> The interpretation of a contract begins with the document itself.... La.C.C. Art. 2046 states that when the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the intent of the parties. If a court does attempt to discern the intent of the parties, the contract must be interpreted in light of other provisions so that each is given the meaning suggested by the contract as a whole.

*Grant v. Ouachita Nat'l Bank*, 536 So.2d 647, 651 (La.App.1988) (citing La.C.C. arts. 2045–57). The district court correctly identified the warranty paragraph as one pertaining only to defects in the items being sold. Clearly and unambiguously the paragraph begins with the words, "Seller warrants the apparatus to be as specified herein...." Delivery, which the district court held was the portion of the contract applicable to Baker Perkins' delay, has a separate paragraph in the contract.[10] Significantly, the delivery paragraph provides a limited variety of situations for which Baker Perkins' delay in delivery would be excused, none of which pertain to the instant case. Logically, then, Baker Perkins may be held liable for those delays in delivery not caused by the enumerated excused conditions. Under Baker Perkins' strained interpretation of the offer it tendered to Cotton Bros., no liability whatsoever would accrue from even indefinite delay in delivery, notwithstanding lack of contract-specified justification. Such a reading fails to give meaning to the delivery provision of the contract, as well as to the premium which Baker Perkins charged Cotton Bros. for accelerated installation. Reading the entire contract in a light giving meaning to

---

10. DELIVERY

Seller shall be excused for any delay in delivery, or any part delivery, hereunder, if caused by fire, explosion, flood, epidemic, war, interruption or delay in transportation, labor troubles or any cause beyond its reasonable control. In case of delay caused by Buyer's failure to furnish necessary information as to details to be determined by Buyer, Seller may extend date for shipment for a reasonable time, based on period of Buyer's delay and conditions at Seller's factories. In case shipment shall be delayed by Buyer's failure to furnish shipping instructions on request, or otherwise by Buyer, Seller may as [sic] its option invoice material ready for shipment, and payment therefore shall be made in accordance with the terms hereof, substituting the invoice for the Bill of Lading.

the whole, we perceive no error in the district court's conclusion.[11]

### Evidence of Damages

Baker Perkins asserts that Cotton Bros.' claims should have been dismissed for lack of legally-sufficient evidence causally linking Baker Perkins' breach of contract with the damages Cotton Bros. sustained. Baker Perkins' argument is a threefold contention that: (a) the consolidated books of the Cotton Bros. family of corporations were used rather than only Cotton Bros.; (b) the contract damages were not separated from the fire damages; and (c) Cotton Bros. relied on faultily-prepared regression analysis studies for its profits projections.

We find each of the arguments unavailing. Our standard of review for consideration of attacks on jury damage awards is well-settled. We "consider[ ] all the evidence and avoid[ ] second-guessing conflicts in the evidence or credibility determinations. This court will not disturb a jury verdict based on substantial evidence and reasonable inferences." *Snyder v. Whittaker Corp.,* 839 F.2d 1085, 1090 (5th Cir. 1988) (citations omitted).

With respect to the consolidated Cotton Bros. accounts, this evidence was appropriate given the district court's reformation of the Baker Perkins contract. The district court noted Baker Perkins' long-time association with the Cotton Bros. operation and its understanding of how Cotton Bros. operated. Moreover, substantial evidence was introduced explaining how Cotton Bros. mitigated its damages: by shifting Alexandria production throughout its corporate family of bakeries. In that light, the district court did not err in permitting evidence of Cotton Bros.' damages to be presented on the basis of the consolidated financial records of the corporation.

Baker Perkins' argument that the evidence did not link its breach of contract with the damages alleged was specifically rejected by the district court. Within the thousands of pages of transcripts generated at trial are numerous indications of the methodologies used to project loss and the dates upon which the liability of Baker Perkins was calculated. "Obviously," argues Baker Perkins, "the fire caused far greater damage than any delay which may have been caused by Baker Perkins." That fact, however, is neither obvious nor proven on the record. What *is* clear from consideration of the evidence is that after the jury was presented both sides of the argument, it was instructed specifically on the requirements under state law that a causal link be proven between the breach and the damages alleged,[12] and arrived at a reasonable calculation of both the damages and the degree to which Cotton Bros.' own fault contributed to the delay in the start-

---

11. Baker Perkins also appeals the directed verdict on the issue of contract start-up date. We perceive no error in the court's memorandum opinions of August 18, 1987, and January 23, 1990, in which it held that the start-up date contemplated for the contract, based on the actions of Baker Perkins, was September 21, 1981. The district court further correctly held that Baker Perkins proffered no evidence probative on why it could not have performed the contract within that time frame and thus declined to present the issue to the jury.

12. The district court instructed:

The primary aim or principal of the law of damages for breach of contract is to place the plaintiff in the same position in which he would have been if the contract had been fulfilled. Or to place the plaintiff in the same position which he would have occupied had the breach of contract not occurred. In determining whether Cotton Brothers had sustained any damages attributable to Baker['] Perkins breach of contract, you must keep in mind that under Louisiana law first damages in breach of contract must be proven with reasonable certainty and secondly a claim for the lost profits cannot be supported by a mere statement of loss nor by speculation or conjecture unless *direct evidence is unavailable.* But in cases where direct evidence is not available to establish the exact extent of loss caused by a breach of contract report [sic] the customary or foreseeable profits as a measure of damages is proper. In other words, it is Cotton Brothers['] burden to prove by a preponderance of the evidence that the damages Cotton Brothers claims from Baker Perkins including loss of profits were in fact sustained and if so, that such damages were caused by Baker Perkins. Under Louisiana law a party to a contract remains responsible for the damages caused by its breach of that contract so long as the other contracting party has acted reasonably and within its legal rights.

up date. Our review of the evidence discloses no grounds upon which to disturb the findings of the jury.

■ Finally, Baker Perkins argues that the trial court erred in allowing Cotton Bros. to employ the "least squares" method of regression analysis to calculate the projected earnings component of its lost earnings, basing its projections solely on past earnings data. Baker Perkins was afforded ample opportunity to cross-examine witnesses who undertook the projections in question, and to present evidence contrary to the testimony of opposing witnesses. *Cf. Wilkins v. University of Houston*, 654 F.2d 388, 403 (5th Cir.1981) ("Ideally, when a multiple regression analysis is used, it will be the subject of expert testimony and knowledgeable cross examination from both sides. In this manner, the validity of the model and the significance of its results will be fully developed at trial, allowing the trial judge to make an informed decision as to the probative value of the analysis."), *vacated*, 459 U.S. 809, 103 S.Ct. 34, 74 L.Ed.2d 47 (1982), *on remand*, 695 F.2d 134 (5th Cir.1983). While the least squares method is subject to misuse, we do not find that its use in this instance gave a legally insufficient basis for the jury to make its findings. The district court did not err in permitting the evidence.

### Baker Perkins' Claim for the Unpaid Contract Price

■ Baker Perkins argues that the trial court erred by directing a verdict against its claim for the $209,000 contract balance which Cotton Bros. stipulates remains unpaid. We agree. The district court found that Baker Perkins could not charge Cotton Bros. for that portion of the contract price attributable toward accelerated performance as Baker Perkins failed to perform its obligations timely.[13] Louisiana law provides that "[i]n case of reciprocal obligations, the obligor of one may not be put in default unless the obligor of the other

has performed ... his own obligation." La.C.C. art. 1993. Cotton Bros. may only collect damages for Baker Perkins' failure to perform its obligations under the accelerated schedule if it pays the acceleration premium. This is especially true in a case in which Cotton Bros. has successfully argued in the IRI litigation that it is due compensation from its insurer for having paid the acceleration premium. The trial court erred; Baker Perkins is due this sum.

### Prejudgment Interest

■ Baker Perkins contends that the trial court erred by awarding prejudgment interest from the date of judicial demand rather than the date of entry of judgment. The crux of this contention is that the amount Baker Perkins owed Cotton Bros. was not ascertainable until judgment was granted. Baker Perkins relies on *Alexander v. Burroughs Corp.*, 359 So.2d 607 (La.1978), as support for its argument. That case lends little succor to Baker Perkins' position. *Alexander* was a redhibition case in which the plaintiff (a receiver for a computer purchaser), sought and received damages for the redhibitory defect and attorneys' fees. The court discussed the long-standing issue of whether legal interest ran from the date of formal demand for rescission or from the date of judgment, and held that the plaintiffs' claim was ascertainable on the former. The court further held that legal interest on attorneys' fees, which were not awarded until entry of judgment, were to be dated from that day as that was the date at which they became ascertainable. 359 So.2d at 613–14.

Baker Perkins takes the attorneys' fees portion of *Alexander* and stretches it to encompass the facts at bar. Its contention is that the precise amount of damages were not determined until the jury rendered its verdict.

A more recent case, *Mini Togs Products, Inc. v. Wallace*, 513 So.2d 867 (La.App. 1987), carefully explains *Alexander* and its

---

13. We note further that only $165,575 of the $209,000 was allocable toward the acceleration premium; the remainder constituted accounts payable from contracts not directly involved in this litigation.

codicil precedents in the context of a contractual—rather than redhibitory—dispute and arrives at a lucidly-explained conclusion that contract damages, even though unliquidated and not precisely ascertainable until judgment, are "due from the moment of active violation of the contract or from the time defendant was put in default which was no later than the commencement of the suit. Defendant's debt or obligation to pay money damages bears legal interest from the time the damages were due." 513 So.2d at 874. The court based its conclusion on an analysis of the *Alexander* court's use of "ascertainable."

In using the term "ascertainable" the court did not mean that the precise amount of the claim need be liquidated or established without dispute in order for legal interest to commence in a contract claim. In the *Alexander* case the amount of recovery was in dispute throughout with the amount awarded by the district court being changed by the court of appeal and then again by the supreme court. What was meant was that a debt or claim for the payment of money or damages under a contract is ascertainable and becomes due on the date an active violation occurred or the obligor was put in default, which can be earlier but never later than judicial demand, and legal interest runs from that date.

*Mini Togs*, 513 So.2d at 873. In light of this recent appellate explanation of *Alexander* by former Chief Circuit Judge Pike Hall,[14] Baker Perkins' argument to the contrary is not persuasive. *Cf. Meeks v. Huntington Sch., Inc.*, 489 So.2d 435 (La. App.1986) (finding fault with *Alexander*, and holding that in salary case, the dispute is whether interest dates from due date or date of judicial demand, and settling on the former). Interest accrues from the date of judicial demand; the district court did not err.

---

**14.** Now an Associate Justice of the Louisiana Supreme Court.

**15.** For clarity, we restate that all of the judgments now before the court are rendered as follows:

    1. Cotton Bros. v. IRI. Modified and rendered in the amount of $912,238.03. Affirmed in the amount of $324,735. The net judgment is thus $1,236,973.03 plus the stat-

*Conclusion*

The trial court erred by awarding Cotton Bros. a double recovery as against IRI, and Cotton Bros.' judgment for claims arising from its business interruption insurance is MODIFIED to $912,238.03. The district court's award of statutory insurer penalties is likewise MODIFIED to reflect only a penalty on the amounts awarded, $484,877.36 for the business interruption, and $324,735 in expediting expenses.

The district court erred as a matter of law by directing a verdict against Baker Perkins in its $209,000 claim against Cotton Bros. That judgment is REVERSED, and judgment is RENDERED in favor of Baker Perkins on that claim.

Subject to the modifications contained herein, the judgments appealed are AFFIRMED.[15]

---

utory penalty of 12% ($148,436.76), with prejudgment interest on those amounts dating from January 12, 1983.

    2. Cotton Bros. v. Baker Perkins. Affirmed in the amount of $1,342,624. Prejudgment interest to date from February 7, 1984.

    3. Baker Perkins v. Cotton Bros. Reversed and rendered in the amount of $209,000. Prejudgment interest to date from February 21, 1984.